**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

_____
                                  )
HONEYWELL INTERNATIONAL INC.,  )
115 Tabor Road                              )
Morris Plains, NJ 07950                    )
                                  )
           Plaintiff,                  )
       v.                           )
                                  )    Case No. _____
LIBERTY MUTUAL INSURANCE COMPANY  )
175 Berkeley Street                    )
Boston, MA 02116                       )
                                  )
Serve:  Insurance Commissioner, Registered Agent  )
        Maryland Insurance Administration  )
        200 St. Paul Place, Suite 2700  )
        Baltimore, MD 21202  )
                                  )
and  )
                                  )
FIDELITY AND DEPOSIT COMPANY OF  )
MARYLAND  )
1400 American Lane  )
Schaumburg, IL 60196  )
                                  )
Serve:  Insurance Commissioner, Registered Agent  )
        Maryland Insurance Administration  )
        200 St. Paul Place, Suite 2700  )
        Baltimore, MD 21202  )
                                  )
and  )
                                  )
ZURICH AMERICAN INSURANCE COMPANY  )
1400 American Lane  )
Schaumburg, IL 60196  )
                                  )
Serve:  Insurance Commissioner, Registered Agent  )
        Maryland Insurance Administration  )
        200 St. Paul Place, Suite 2700  )
        Baltimore, MD 21202  )
                                  )
           Defendants.            )
_____)

## COMPLAINT

For its Complaint against Defendants Liberty Mutual Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company (collectively, the "Sureties"), Plaintiff Honeywell International Inc. ("Honeywell"), states and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff Honeywell International Inc. ("Honeywell") is a Delaware corporation with its principal place of business in Morris Plains, New Jersey. Honeywell is engaged in the business of, among other things, furnishing construction services, materials and supplies and is properly registered and licensed to transact business in the State of Maryland.

2. Defendant Liberty Mutual Insurance Company ("Liberty Mutual") is a Massachusetts corporation, with its principal place of business located at 175 Berkeley Street, Boston, Massachusetts, 02116. Liberty Mutual is engaged in the business of providing surety bonds, including payment and performance bonds for construction projects, and is properly registered and licensed to transact business in the State of Maryland.

3. Defendant Fidelity and Deposit Company of Maryland ("F&D") is a Maryland corporation, with its principal place of business located at 600 Red Brook Boulevard, Owings Mills, Maryland, 21117. F&D is engaged in the business of providing surety bonds, including payment and performance bonds for construction projects, and is properly registered and licensed to transact business in the State of Maryland.

4. Defendant Zurich American Insurance Company ("Zurich") is a New York corporation, with its principal place of business located at 1400 American Lane, Schaumburg, IL 60196. Zurich is engaged in the business of providing surety bonds, including payment and

performance bonds for construction projects, and is properly registered and licensed to transact business in the State of Maryland.

5. Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 1332(a) and (c) based on complete diversity of citizenship between the parties and because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Montgomery County, Maryland.

## FACTUAL BACKGROUND

A. **ESA Subcontract and Performance Bond**

7. On or about December 23, 2010, Honeywell entered into a contract with the United States General Services Administration ("GSA" or "Owner") wherein Honeywell agreed to be the Energy Services Performance Contractor for the third phase of the Energy Infrastructure Development for the Food and Drug Administration's Federal Research Center White Oak Campus Co-Generation Power Plant in Silver Spring, Maryland. Related thereto, Honeywell also agreed to provide services to operate and maintain the Central Utility Plant facilities after construction had been completed.

8. In furtherance of its work under the Prime Contract, on or about February 18, 2011, Honeywell entered into a subcontract with Engineered Systems Alliance, LLC ("ESA")[1], wherein ESA agreed to provide certain design/build services pursuant to the terms and conditions of the subcontract ("Subcontract"). A true and correct copy of the Subcontract is attached hereto as Exhibit 1 and incorporated by reference herein.

---

[1] ESA is a Virginia limited liability company, comprised of three sponsor members, Pierce Associates, Inc., Hankins & Anderson, Inc., and Truland Systems Corporation. ESA has no assets of its own.

9. In accordance with the requirements of the Subcontract, ESA obtained a performance bond ("Performance Bond") in the amount of $91,862,140, binding Liberty Mutual, F&D, and Zurich as sureties to Honeywell for ESA's performance and completion of the Subcontract.

10. On or about March 18, 2011, ESA, the principal on the Performance Bond, and the Sureties executed the Performance Bond and delivered it to Honeywell. A true and correct copy of the Performance Bond is attached hereto as Exhibit 2 and incorporated by reference herein.

11. The Performance Bond states that "[ESA] and the Suret[ies], jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to [Honeywell] for the performance of the [Subcontract], which is incorporated herein by reference." *See* Ex. 2 at Article 1.

**B.   ESA's Actions, Breaches of Duty and Default**

12. ESA's work under the ESA Subcontract included design and construction of a 4.5MW natural gas turbine-generator ("G-9 Turbine") and the associated inlet air cooling coil ("IAC-9 Coil").

13. As part of its work under the Subcontract, ESA installed the G-9 turbine and the IAC Coil, but by November of 2013 the IAC-9 Coil had not been accepted.

14. ESA was responsible for protecting its work, including the IAC-9 Coil, until such time as it was accepted.

15. In November of 2013, ESA personnel took steps to winterize IAC-9 Coil, by draining and drying the coil and manually shutting off water access.

16. ESA failed to secure the IAC-9 Coil against water intrusion by failing to perform some or all of the following tasks: (1) fully draining the IAC-9 Coil of all water, (2) completing

4

the appropriate lock out/tag out procedure to ensure that the manual valves were closed and secured after the coils had been drained, and/or (3) disabling automatic valves or other equipment that could introduce water into the IAC-9 Coil.

17. As a result of ESA's failures, water remained or was later introduced into the IAC-9 Coil, where it froze during the winter months, causing the copper tubing in the coil to rupture.

18. Honeywell did not know that the IAC-9 Coil had been damaged.

19. In May 2014, the IAC-9 Coil was re-pressurized and chilled water was introduced. The water leaked from the damaged copper tubing and was drawn into the G-9 Turbine, where it severely damaged the engine (IAC-9 Coil and G-9 Turbine collectively, "Damaged Systems").

20. At the time of this incident, ESA's subcontractor was consulted and authorized re-pressurization of the IAC-9 Coil.

21. Pursuant to the terms of the Subcontract, ESA is contractually obligated to:

   a. remedy any loss or damage that ESA caused to the Subcontract Work. *See* Ex. 1 at §§ 9.13.2 and 9.15.6;

   b. protect partially completed Subcontract Work and be responsible for any damage occasioned by its failure to do so. *See* Ex. 1 at § 7.7;

   c. implement appropriate safety measures pertaining to the Subcontract Work, including establishing safety rules, appropriate warnings and notices to protect the Subcontract Work from damage. *See* Ex. 1 at §9.15.4; and,

   d. indemnify and hold Honeywell harmless from and against all losses to the extent arising out of, relating from or occurring in connection with ESA's negligence or breach of the Subcontract. *See* Ex. 1 at § 11.1

22.     In the event that ESA disputes its liability for certain work, the Subcontract requires that ESA timely perform the disputed work and then provide written notice of a claim for adjustment, or avail itself of the Claim Resolution provisions of the Subcontract. *See* Ex. 1 at § 12.2.1.

23.     At various times after the incident that resulted in the Damaged Systems, including on or about August 7, 2014, Honeywell demanded that ESA confirm its intention to complete all required repairs to the Damaged Systems, provide a detailed written schedule for the repairs, and complete the repairs by no later than October 1, 2014.

24.     Despite demand, ESA refused to repair the Damaged Systems.

**C.      Honeywell's Performance Bond Claim**

25.     At various times after ESA refused to repair the Damaged Systems, including by letter dated September 3, 2014, Honeywell provided written notice to the Sureties that Honeywell was considering declaring ESA in default, and requested a conference with the Sureties to discuss methods of performing the Subcontract.

26.     On or about September 23, 2014, a conference call was held, wherein the Sureties and Honeywell discussed the Sureties' obligations under the Performance Bond to repair the Damaged Systems. Claims counsel for Liberty Mutual informed Honeywell that Liberty Mutual was assuming the role of lead surety, and that it would be handling the matter on behalf of all co-sureties.

27.     In furtherance of their investigation, the Sureties requested that Honeywell furnish certain claim support documents and respond to specific questions.

28.     Honeywell directed the Sureties to the principal, ESA for much of the requested information, as ESA had performed the design/build work, produced the vast majority of project

documents, and served as the primary record keeper, but Honeywell also provided information to the Sureties as well.

29. On December 10, 2014, Honeywell sent ESA a Notice of Default advising ESA that it had seventy-two (72) hours to satisfy its obligation to commence the repair of the Damaged Systems.

30. ESA thereafter took no action to cure the default or make arrangements to repair the Damaged Systems.

31. On or about July 23, 2015, counsel for Honeywell notified the Sureties that it was considering terminating ESA and requesting that the Sureties perform their obligations under the Performance Bond. Liberty Mutual responded with a request for additional information.

32. On or about August 28, 2015, Honeywell provided the Sureties access to a File Transfer Protocol (FTP) site, which gave the Sureties direct access to a database containing documents for the project.

33. Honeywell continued to have meetings and communications with ESA and the Sureties, including a meeting on September 30, 2015, with participation of ESA through its constituent members, Honeywell, and the Sureties to again discuss repairs to the Damaged Systems.

34. Despite all of the communications and information that have been provided to ESA and to the Sureties, ESA has refused to repair the Damaged Systems, and the Sureties have declined to make arrangements for their repair. As a result of ESA's refusal to repair the Damaged Systems, Honeywell notified ESA and the Sureties that it was formally terminating ESA's right to complete the Subcontract, and that it would pay the balance of the Subcontract price to the Sureties.

35.     Following Honeywell's termination of ESA's ability to complete the Subcontract Work, the Sureties have not arranged for repairs to the Damaged Systems

36.     At this point, the Sureties have been investigating this matter over a year and a half – since September 2014 – without making any commitment to satisfy the obligations of ESA and the Sureties to complete the repairs.

37.     Despite additional written notices to the Sureties demanding that the Sureties perform their obligations under the Performance Bond and make arrangements for the necessary repairs, the Sureties have refused to do so.

## COUNT I
## SUIT ON PERFORMANCE BOND

38.     Honeywell restates and incorporates by reference Paragraph Nos. 1-37 of this Complaint as though fully restated herein.

39.     On or about March 18, 2011, the Sureties and ESA executed the Performance Bond, whereby they jointly and severally bound themselves, their heirs, executors, administrators, successors and assigns to Honeywell for performance of the Subcontract.  *See* Ex. 2 at Article 1.

40.     ESA breached its duties under the Subcontract and ultimately defaulted on the Subcontract, by among other things, failing to (1) remedy any loss or damage that ESA caused to the Subcontract Work, s*ee* Ex. 1 at §§ 9.13.2 and 9.15.6; (2) protect partially completed Subcontract Work and be responsible for any damage occasioned by its failure to do so, *see* Ex. 1 at § 7.7; (3) implement appropriate safety measures pertaining to the Subcontract Work, including establishing safety rules, appropriate warnings and notices to protect the Subcontract Work from damage, *see* Ex. 1 at §9.15.4; (4) indemnify and hold Honeywell harmless from and against all losses to the extent arising out of, relating from or occurring in connection with ESA's

8

negligence or breach of the Subcontract, *see* Ex. 1 at § 11.1; and (5) timely perform the disputed work despite written demand from Honeywell, *see* Ex. 1 at § 12.2.1.

41. Honeywell has fully complied with the terms and conditions of the Performance Bond.

42. The Sureties have denied liability for, and have refused to perform, their obligations under the Performance Bond.

43. Honeywell has satisfied all conditions precedent for commencing and maintaining this action on the Performance Bond, or such conditions precedent have been waived or excused.

44. The Sureties are jointly and severally liable to Honeywell for the cost of the repairs, plus costs due to the Owner as a result of ESA's breach, in an amount in excess of $75,000 and to be proved at trial, plus prejudgment interest and costs of suit as allowed by law.

**WHEREFORE**, Plaintiff Honeywell respectfully requests judgment in its favor and against Defendants Liberty Mutual Insurance Company, Fidelity and Deposit Company of Maryland, and Zurich American Insurance Company, jointly and severally, plus prejudgment and post-judgment interest, costs of suit, and any further relief that this Court deems just and proper.

Dated: May 12, 2016

Respectfully submitted,

/s/ Michael E. Tucci
Michael E. Tucci, #14744
Stinson Leonard Street LLP
1775 Pennsylvania Avenue, NW, Suite 800
Washington, D.C. 20006
Tel: (202) 728-3010; Fax: (202) 572-9964
michael.tucci@stinson.com
*Counsel for Honeywell International Inc.*

CORE/2008440.0238/125503492.1

**JURY DEMANDED**

Plaintiff Honeywell International Inc. respectfully demands a jury trial on all triable issues.

/s/ Michael E. Tucci
Michael E. Tucci, #14744
Stinson Leonard Street LLP
1775 Pennsylvania Avenue, NW, Suite 800
Washington, D.C. 20006
Tel:  (202) 728-3010; Fax: (202) 572-9964
michael.tucci@stinson.com
Counsel for Honeywell International Inc.